**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | CRIMINAL ACTION |
| ) | |
| CHARLES HAND, III  ) | NO. 1:22-CR-111-01 (JEB) |
| ) | |

**DEFENDANT'S MOTION TO MODIFY CONDITIONS OF BOND**

NOW COMES Defendant CHARLES HAND, III, by and through undersigned counsel, and moves his Court to modify his conditions of release to eliminate the provision barring him from possessing a firearm during the pendency of this case.

Defendant is charged in a four-count Criminal Information with misdemeanor offenses that the Government claims were committed on January 6, 2021, at the U.S. Capitol. Those offenses are Entering and Remaining in a Restricted Building, Disorderly and Disruptive Conduct in a Restricted Building, Disorderly Conduct in a Capitol Building, and Parading, Demonstrating or Picketing in a Capitol Building, in violation of 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§ 5014(e)(2)(D) and (e)(2)(G), respectively. Defendant and his wife are charged as co-defendants, with identical offenses against each.

Defendant was originally arrested without incident in Georgia on March 11, 2022, based on a Criminal Complaint filed in this District, and he was released by the U.S. District Court for the Middle District of Georgia that same day, on an unsecured bond of $5000. His Appearance Bond did not contain any condition that Mr. Hand could not continue to possess firearms, nor is he a prohibited person to which any restrictions on firearms possession would otherwise apply.

On March 22, 2022, Mr. Hand made his initial appearance in this District, in a Zoom hearing held before U.S. Magistrate Judge Zia M. Farruqui. At that time, the prosecutor in this

1

case requested a new condition restricting firearms possession – not based on any alleged violation or unique circumstances of Mr. Hand, but simply on the basis that the Government appears to seek to bar firearms possession by any defendants charged in the January 6 cases. Despite the fact that Mr. Hand by that point already had been supervised without incident while continuing to possess firearms (including in his home) for almost three weeks, Judge Farruqui overruled the objections of defense counsel. He granted the Government's request and ordered Mr. Hand to dispose of any firearms within 48 hours, while continuing to keep Mr. Hand under courtesy pretrial supervision in the Middle District of Georgia.[1]

This Court is charged with determining, under 18 U.S.C. § 3142(c)(1)(B), "the *least restrictive* further condition, or combination of conditions, that … will reasonably assure the appearance of the person as required and the safety of any other person and the community." In appropriate cases, those conditions can include a restriction that a person "refrain from possessing a firearm, destructive device or other dangerous weapon," *id.* at § 3142(k)(viii), but as noted, this can be appropriately imposed only if it is the "least restrictive" condition necessary.

The only argued basis for this new condition that now bars Mr. Hand from continuing to possess firearms in rural Georgia was a claim that probation officers who make home visits could be in peril by entering a residence where firearms are located. There appears to be no other stated basis for the restriction. Yet the courtesy pretrial officer(s) who are actually charged with making those visits did not make that request when Mr. Hand's case was first heard in Georgia. It was only made by D.C. officials once this case arrived in D.C., apparently overriding the view of what the Georgia federal court itself deemed "necessary," in this misdemeanor case.

---

[1] Mr. Hand thereafter complied with the Court's Order, even though the Hands live in a very rural setting where keeping firearms is considered normal and even commonplace (Georgia is apparently an "open carry" state).

It should be noted that Mr. Hand and his wife live in Butler, Georgia, a small rural town that lies between Macon, Columbus and Albany, out in the country in a house that is about 75-100 feet from a pond.  Due to this firearms restriction, Mr. Hand just last week was forced to kill a water moccasin (about 6 feet long) that had approached his house with a shovel, since no firearm was available.  The firearm restrictions imposed are, at a minimum, not proportionate to the ostensible need, and are not the "least restrictive" available.  And so this motion is filed.

Defendant moves this Court to lift the restriction on his possession of firearms contained in his D.C. bond.  The Second Amendment to the Constitution, as interpreted by the U.S. Supreme Court in *McDonald v. Chicago*, 561 U.S. 742 (2010), relying in part on *Heller v. District of Columbia*, 554 U.S. 570 (2008), protects a private person's right to possess firearms in states and localities.

While that right may be subject to reasonable restrictions, its importance as a recognized, constitutionally-based freedom guaranteed to the American citizenry must fairly be given considerable weight before it can appropriately be restricted.  Here, the current restriction is neither reasonable nor justified by the circumstances.  Defendant presents with no factors showing him to be a danger to others.  He has never been convicted of anything.  He is not a "prohibited person" under 18 U.S.C. § 922(g) that would make his possession of firearms illegal.  He successfully completed a recent urine screen, as did his wife.  And the charges he faces are all *non*-violent *misdemeanors*.  The allegations against Mr. Hand do not include any alleged assault against any person, or even the vandalizing or destruction of property.

This defendant also lives in rural Georgia, not particularly close to any U.S. courthouse.  The stated need for this firearms restriction, that a U.S. Pretrial Services Officer supervising the defendants might be in peril if making a home visit, thus falls flat.  The Hands' home is an

hour's drive away from any city where a U.S. Pretrial Office might be located. Given the distance of the U.S. Courthouse from the defendants' residence, it is not likely that any officer would appear unannounced. And the odds of a future unscheduled visit seem particularly remote since a home visit has already now been successfully completed, with the need for another far from apparent in this mere misdemeanor case. As noted, there has been no suggestion that the Middle District of Georgia court or its U.S. Probation Office itself felt a need for this restriction, and these defendants in any event were arrested without incident. Undersigned counsel also spoke to Mr. Hand's U.S. Pretrial Officer in Georgia (Roberto Pastrana) via telephone today, and Mr. Pastrana advises that he takes no position and leaves this determination up to the Court.

In the analogous case of *United States v. Tina Logsdon*, 1:22-cr-23-02 (TFH) (D.D.C.), Judge Thomas F. Hogan recently reversed a firearms restriction placed on a January 6 defendant. There, as here, the defendant Tina Logsdon had been charged with a family member, her spouse. Ms. Logsdon moved the District Court to lift the firearms restriction that had been imposed at the initial hearing. The facts of Ms. Logsdon's case were functionally identical to those here. The Government in that case, after seeking the firearms restriction at both the Rule 5 Hearing in Ohio and at the initial appearance in this District, ultimately chose *not* to impose lifting the firearms restriction, so long as Ms. Logston would still be prohibited from possessing "other weapons or destructive devices." Ms. Logston agreed to that compromise. (ECF Docket #20, March 7, 2022). So too does this defendant. Judge Hogan, after reviewing the pleadings, granted Ms. Logsdon's request to have the firearms lifted. (Minute Order, ECF Docket #21, March 9, 2022).

4

Judge Hogan also added a condition that, when actually meeting with any U.S. Pretrial Services personnel, Ms. Logsdon should not possess a firearm.[2]

Similarly, in *United States v. Loruhamah Yazdani-Isfehani*, Case No. 1:22-cr-543-03 (CRC), Judge Cooper granted relief to a defendant seeking to lift a firearms restriction imposed as a condition of bond. There, as here, Magistrate Judge Farruqui had issued the restriction the Government sought. Judge Cooper did not find the proffered rationale sufficient a ban on possessing firearms in one's home, although he did continue to limit the defendant's possession of firearms to possession within the defendant's home, rather than authorizing any carrying.

Such common-sense, more limited restrictions on this defendant's Second Amendment rights should be considered and adopted by this Court, particularly given its statutory charge to impose only the "least restrictive" conditions necessary. Although Mr. Hand relinquished other firearms once this condition was imposed, he is herein seeking only the ability to possess just two: his single-shot .410 shotgun (which he would plan to keep in his shop), and a .45 revolver (which he would plan to keep in his vehicle console).

The fact that Mr. Hand's wife is admittedly a prohibited person should not prevent Mr. Hand from possessing these firearms, since his constitutional rights are independent of hers. Mr. Hand would also plan to keep the single-shot .410 shotgun in a locked container in his shop, and the .45 revolver locked in his vehicle console. Ms. Hand has no key to either, and the defendants have in fact maintained this separation of Ms. Hand from the firearms for years, due to her status.

There is no basis to conclude on these facts that limiting Mr. Hand's Second Amendment rights is necessary here. The current blanket, rote application of a non-possession firearms restriction across the board in all January 6 cases violates a basic principle in our criminal justice

---

[2] Later, Judge Hogan issued another Minute Order stating that, after "consideration of the 3/9/22 MINUTE ORDER and consultation with Pretrial Services," that "Pretrial Services personnel are no longer required to conduct in-person home visits with defendants." *See* ECF Docket Entry (unnumbered), March 11, 2022.

system: to treat all defendants, and their cases, individually. Our system is not designed to, nor should it, treat defendants in bulk, much less as fungible, indiscriminately. Any bond condition – and particularly one that infringes on a bedrock constitutional right – should not be considered a "standard condition" of pretrial release, and certainly without an examination into both the need for the restriction and whether or not it is justified in the circumstances presented to the Court, taking into account the nature of the case (here, mere misdemeanors) along with this defendant's background (no criminal history). And at bottom, this Court must also remain mindful that the governing "least restrictive" paradigm was imposed for an important reason – because this defendant continues to be presumed innocent unless and until proven guilty.

For the foregoing reasons, this Court should remove or modify the firearms condition of Mr. Hand's bond. Undersigned defense counsel has conferred with the Government with respect to this Motion. Assistant U.S. Attorney Alison B. Prout advises that the Government does not consent to this motion being granted.

WHEREFORE, for the reasons stated, Defendant Charles Hand, III's Motion to Modify Conditions of Release should be granted to allow him to possess the two firearms noted above, under such terms and conditions as this Court may deem appropriate.

        Respectfully submitted,

          /s/ Gregory S. Smith              
        Gregory S. Smith
        Law Offices of Gregory S. Smith
        913 East Capitol Street, S.E.
        Washington, D.C. 20003
        (202) 460-3381
        gregsmithlaw@verizon.net

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE is being served this day upon all counsel via the Court's ECF system.

This 5th day of May, 2022.

                                               /s/ Gregory S. Smith
                                               Gregory S. Smith