UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-CR-111-01 (JEB) |
| | : | |
| CHARLES HAND, III, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO MODIFY CONDITIONS OF BOND**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to defendant Charles Hand, III's Motion to Modify Conditions of Bond. ECF No. 12. The defendant seeks to amend his conditions of release by removing the firearms restriction. The government opposes removing this condition.

**BACKGROUND**

**I.     Hand's Participation in the Capitol Riot**

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

Co-defendants Charles Hand, III and Mandy Robinson-Hand participated in this attack. They traveled from their home in Georgia to Washington D.C. on January 5, 2021 to attend the "Stop the Steal" rally against the results of the 2020 Presidential Election. Hand and Robinson-Hand left the rally early and made their way to the U.S. Capitol.

The West Lawn of the U.S. Capitol was breached at approximately 12.53 p.m. when rioters pushed past fencing and fought past a line of officers to move closer to the Capitol Building. Hand and Robinson-Hand were among the crowd on the West Lawn by at least 1:06 p.m., when a video captured Hand breaking off a piece of metal fencing and placing it into his back pocket. The crowd around them was chanting and shouting at a line of law enforcement officers several rows in front of them. Hand and Robinson-Hand were nearby during a physical clash with law enforcement when members of the crowd standing in front of them were pushing and shoving the officers. In a video obtained from Robinson-Hand's cell phone, a person standing close to Hand who is believed to be Robinson-Hand can be heard saying, "They broke through" and "Going in, tear gas and all."

In spite of the shouting and the chaos around them and the clear danger, Hand and Robinson-Hand continued forward toward the Capitol Building. They entered the building together at about 2:26 p.m. amid chants of "Take it back" as an alarm blared. Once inside, they traveled through multiple areas of the Capitol together for about 19 minutes, including walking through the Crypt, walking down a flight of stairs to the Capitol Visitor Center, going back upstairs, through the Hall of Columns, and exiting the building at 2:45 p.m.

While inside, Robinson-Hand took a video on her phone capturing Hand helping another rioter who had climbed on top of a bronze statue of a man to place a flag that read, "TRUMP 2020 – KEEP AMERICA GREAT" in the hands of the statue. Hand was also in the vicinity of an altercation between rioters and law enforcement near the Capitol Visitor Center in which a rioter threw a chair at a police officer and rioters held open a metal gate that officers were attempting to close to control the movement of the crowd. At another point, Hand appeared to try to advance toward a scuffle between law enforcement and rioters as Robinson-Hand restrained him.

After the Capitol Siege, Hand proudly communicated about his involvement in the January 6, 2021 riot. In a social media post, he described himself as "an eye witness of the storming of the United States Capitol on 1-6-2021" and said that he was "on the scene from 1:30pm to 4:00pm." He further stated that he "saw makeshift fencing that had been torn down," a crowd of people "rushing the Capitol Police," and he acknowledged that the Capitol Police [were] constantly retreating, losing more and more ground." He wrote that "tear gas, rubber bullets, mace and etc wasn't stopping them. . . . Once the Capitol was breached, that's when it got real hairy and the lines of everything became blurred." Nonetheless, he wrote that "From a first hand account, I can tell you that the 'Trumpers' did not break, vandalize, nor attack any law officers. The emotional 'Trump Supporters' were victims to this and are painted to be 'Domestic Terrorist.' This was a complete setup by, wait for it….. The system itself."

## II.     Procedural History

On March 11, 2022, Hand and Robinson-Hand were arrested in their home in connection with complaints charging them with four misdemeanors (violations of 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G)), relating to their role in the January 6 attack on the U.S. Capitol. ECF No. 1. At their initial appearance in the Middle District of Georgia, Hand and Robinson-Hand were both released on conditions, including a $5,000 unsecured bond.

On March 22, 2022, Hand appeared before Magistrate Judge Faruqui. At that hearing, Magistrate Judge Faruqui did not maintain the $5,000 unsecured bond, but did impose the release condition that Hand not possess firearms. ECF No. 6. Hand was also required to cooperate in the collection of a DNA sample if authorized by statute, advise the court or Pretrial Services before changing residence or phone number, appear in court as required, submit to supervision by Pretrial Services in the Middle District of Georgia, stay away from Washington D.C. except for court-

related matters, not violate state, federal, or local law, notify Pretrial Services in advance of travel outside the Middle District of Georgia, obtain Court approval for travel outside of the continental United States, as well as drug testing and possible drug treatment if needed. *Id*. Probation's Pretrial Services report rated Hand's global re-arrest risk to be "medium," and recommended all of the foregoing conditions, including the condition not to possess firearms. *See* Case No. 22-mj-00049.[1] Magistrate Judge Faruqui imposed the same conditions on Robinson-Hand. ECF No. 7.

Following that hearing, counsel for Robinson-Hand inquired of the government to see whether the government would oppose a motion to remove the firearm restriction in her case. Robinson-Hand's counsel withdrew that request after acknowledging that Robinson-Hand is prohibited from possessing firearms as a result of a prior felony conviction.

On May 5, 2022, Hand filed a request to remove the firearms restriction from his bond conditions. ECF No. 12.

## ARGUMENT

**I.  Applicable Authority**

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §

---

[1] The Pretrial Services Report is not filed on the docket and it is not attached here due to the confidential nature of its contents. The government will provide it to the Court if it would assist the Court's determination of the pending motion.

3142(c)(1)(B). These conditions may include prohibiting the defendant "from possessing a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B)(viii).

To determine the appropriate conditions of release, the court considers (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g). The court may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

**II.     The Court Should Not Modify Hand's Release Conditions.**

The factors set forth in 18 U.S.C. § 3142(g) establish that the prohibition barring Hand from possessing a firearm during pretrial release is not unduly restrictive. Regarding the nature and circumstances of the offense charged, the events of January 6, 2021 are unprecedented. The attack "was an assault on the Capitol, and it was an assault on democracy." *United States v. Paul Hodgkins*, 21-cr-0188. (RDM), Tr. at 71. It resulted in significant injuries to law enforcement officers who were protecting the Capitol and members of Congress from the mob.

Hand's individual actions on January 6 also warrant the temporary ban on firearm possession while on pretrial release. While on Capitol grounds, Hand witnessed the mob pushing against law enforcement officers in front of the U.S. Capitol building, but still chose to enter the building. He also destroyed property by breaking off a piece of metal fencing into a potentially dangerous object and placing it in his back pocket. He walked through tear gas to enter the building and while inside, witnessed further altercations with police. Despite everything he saw, he remained inside for almost 20 minutes, contributing to the crowd that overwhelmed law enforcement and led to the delay of the certification of the electoral vote count.

Likewise, the weight of the evidence is strong. Most of the acts described above are captured on video, and when interviewed at the time of his arrest, Hand admitted to breaking the fencing, entering the U.S. Capitol building, and witnessing others destroying property. Hand also admitted to being "on the scene" during "the storming of the United States Capitol on 1-6-2021" in his social media post.

The Court must also consider the danger to the community that would be posed by allowing Hand to possess firearms. To begin, allowing pretrial defendants to possess firearms creates potential danger for the pretrial services officers tasked with visiting the defendants' homes during the period of supervision. The government has confirmed with Hand's Pretrial Services Officer in the Middle District of Georgia that future home visits are anticipated. Moreover, while the government acknowledges that according to the Pretrial Service Report, Hand has no significant criminal history other than a reckless driving conviction, it is undisputed that his co-defendant and wife, Robinson-Hand, is prohibited from possessing firearms due to a prior felony conviction. Even if Hand were to secure any firearms in a safe, the risk that Robinson-Hand could access those firearms if and when Hand removed them for use must be considered.

Hand claims to need a firearm, in part, because he recently killed a Water Moccasin snake on his property with a shovel since no firearm was available. ECF No. 12 at 3. Such a consideration is outside the Bail Reform Act framework. In any event, other alternatives exist for addressing wildlife on his property.[2]

---

[2] For instance, the Georgia Department of Natural Resources recommends that "[t]o reduce the potential for snakes near your home, remove brush, log piles and other habitat features that attract mice, lizards and other animals on which snakes prey." *See* DNR: What to Do When You See a Snake, *available at* https://gadnr.org/dnr-what-do-when-you-see-snake. For Cottonmouths or Water Moccasins, the North Carolina Wildlife Commission further recommends, "[t]he best plan is to leave the snake alone and give it plenty of space." *See* https://www.ncwildlife.org/Learning/Species/reptiles/cottonmouth#89751673-have-a-wildlife-problem. Snake repellants and snake traps make be additional alternatives.

Hand cites *United States v. Logsdon*, Case No. 22-cr-23-02 (TFH) in support of his motion. In *Logsdon*, Judge Hogan removed a firearms restriction placed on a January 6 defendant. But that case is distinguishable. Defendant Tina Logsdon, who had an Illinois permit to possess a firearm in her home, sought the removal of the firearm restriction, asserting that she wished to possess a firearm in her home while her husband worked overnight and she was at home with their children. Unlike Hand, she was not required to meet with Pretrial Services in person. Acknowledging the particular circumstances of her case, the government did not oppose Logsdon's request. In a Minute Order, the Court thus granted the defendant's request that she be permitted to possess a firearm while on pretrial release, but maintained the condition that she not possess a "destructive device" or "other weapon." Case No. 22-cr-23-02, 3/9/22 Minute Order. In addition to the unique circumstances of the defendant including her lack of in-person visits with Pretrial Services, Logsdon did not share a home with a prohibited person like Hand does.

By contrast, in *United States v. Kastner*, Case No. 21-cr-725 (RDM), another January 6 defendant's bid to have the firearms restrictions imposed on him removed was denied. There, the defendant, who had no criminal history and claimed to work at a U.S. Air Force base, was charged only with misdemeanor offenses like Hand. Upon the defendant's request, the Magistrate Judge had already allowed a carve-out to the firearms restriction to permit the defendant to possess a firearm while at his church during services three times a week so that he could continue to serve on his church's security detail. Nonetheless, Judge Moss denied the defendant's motion to completely remove the firearm restriction noting, among other things, that "[t]here is, of course, a 'critical' need to 'safeguard[] the Pretrial Services officers who visit the home of [criminal defendants] in the course of supervision." Case No. 21-vr-725 (RDM) ECF No. 35 at 2 (citing cases). The court further noted that although the defendant had no criminal record and was

7

charged with non-violent misdemeanors, he was alleged to have remained unlawfully in the Capitol building while rioters screamed and pushed against law enforcement. Similarly here, Hand is alleged to have entered the Capitol building despite being present on the West lawn when rioters pushed against law enforcement. Kastner had also researched firearms in the time leading up to January 6, which Hand did not. But Kastner did not live with a prohibited person. *See also United States v. Adams*, Case No. 21-cr-212 (ABJ), ECF No. 30 (order denying Capitol riot misdemeanor defendant's motion to remove firearms restriction).

In summary, and as to the fourth Section 3142(g) factor, the nature of and seriousness of the danger posed justifies the weapons restriction. Hand willingly joined in a mob that breached the United States Capitol during a Joint Session of Congress, and later touted his participation in the riot on social media. If Hand is to remain on release, a firearms restriction here is the minimally necessary condition required to ensure the safety of the community. *See United States v. Green*, No. 3:18-CR-356, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019) (in a tax fraud case, denying motion to modify conditions of release because "Even if Defendant is not charged with a crime of violence and has no history of violence . . . Defendant's possession of firearms endangers officers of the Pretrial Services who may make unannounced visits to ensure that Defendant is complying with the conditions of his release").

**CONCLUSION**

Restricting Hand's access to firearms is the least restrictive condition the Court can impose to assure the safety of the community. The Court should deny Hand's motion.

        Respectfully submitted,

        Matthew M. Graves
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:   */s/ Alison B. Prout*
       ALISON B. PROUT
       Assistant United States Attorney
       Georgia Bar No. 141666
       75 Ted Turner Drive, SW
       Atlanta, Georgia 30303
       (404) 581-6000
       alison.prout@usdoj.gov