Case 1:22-cr-00111-JEB   Document 17   Filed 05/11/22   Page 1 of 7

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION |
| | ) | |
| CHARLES HAND, III | ) | NO. 1:22-CR-111-01 (JEB) |
| | ) | |

## DEFENDANT'S REPLY SUPPORTING MODIFICATION OF BOND CONDITIONS

NOW COMES Defendant CHARLES HAND, III, by and through undersigned counsel, and files this reply in support of his motion to modify his conditions of release to eliminate the provision barring him from possessing a firearm during the pendency of this case.

## OVERVIEW

Hidden amidst the Government's unusually vitriolic brief[1] opposing Mr. Hand's Motion, which itself seeks only limited relief from his bond conditions, are several basic truths that govern that Motion: (1) As the Government concedes, by law this Court must impose the "least restrictive" bond conditions necessary; (2) As the Government does not deny, the burden to add special conditions rests with the Government; (3) As the Government does not deny, the U.S. Pretrial Office in Georgia (the only one interacting with Mr. Hand at his residence) did not and does not insist on this firearms restriction; (4) This is not a "privilege" being requested, but a core constitutional right; and (5) Mr. Hand, a citizen, holds that individual constitutional right independent of whatever restrictions may be placed on his wife's exercise of her own rights. The fact that Mr. Hand retained this right while on bond for weeks before this condition was changed, and his recent snake incident, amply justify a reconsideration of this blanket ban on all firearms.

---

[1] The Government, for example, unfairly describes Mr. Hand and his wife as "participat[ing] in [an] attack," *see* Gov't Opp. at 1, even though they are only charged with basically being present inside the Capitol without authority.

1

To be clear, Mr. Hand in his Motion does not seek a full lifting of the firearms condition, but is a more conservative request: that he be allowed to keep only two firearms: a single-shot .410 shotgun[2] kept inside his work shed, and a .45 revolver kept inside his vehicle console. Both would be locked away from Mr. Hand's wife, just as they were previously locked away during this family's past experience in navigating her designation as a prohibited person. The idea that, during this *misdemeanor* case, his wife would risk a new *felony* charge (and almost certain prison time) by possessing these firearms, simply because her husband may have access to them (when that never happened before, or even after this case during the weeks leading up to the D.C. bond hearing), borders on fantastical and in any event is hardly more likely than not. After his recent run-in with a water moccasin, Mr. Hand now fairly asks this Court to do nothing more than what the law demands: to impose the least restrictive bond condition necessary, so he can again have the protection of one or both firearms for his daily activities in the back country of rural Georgia.

## BACKGROUND

The Government begins its Opposition with an inflammatory discussion of the events of January 6, 2021, which unfortunately seeks to conflate Mr. Hand's own role with that of all the other participants. The Government claims "thousands" took part in an "attack," and "forced their way into the U.S. Capitol building." ECF #18, at 1. Mr. Hand, however, is not charged with attacking anyone, or forcing his way anywhere. For example, the Government claims the West Lawn of the Capitol was "breached at approximately 12:53 p.m., when rioters pushed past fencing and fought past a line of officer." But as its own descriptions continue (and concede), it cannot say Mr. Hand and his wife were even "among the crowd" there until "1:06 p.m." *Id.* at 2.

---

[2] A .410 is a low-gauge shotgun with smaller pellets, most often used to hunt rabbits or other small game. It is type of shotgun often given to a beginner, and is not at all what one would typically use to hunt, for example, deer.

Repeatedly, the Government's uses associational descriptions, merely speaking of Mr. Hand and his wife being "nearby" when a physical clash occurred, or what another "person standing close to Hand … can be heard saying." *Id.* Neither Mr. Hand nor his wife forced their way into the Capitol, but merely "entered" it (allegedly amidst chants and alarms). *Id.* They were inside just "19 minutes," before "exiting the building at 2:45 p.m." – a point in time long before then-President Trump later publicly called on his supporters via Twitter to leave. Mr. Hand made video, allegedly helped another man place a Trump flag in the hands of a statute, and allegedly "appeared" to try to advance toward a scuffle, *id.* – but then admittedly *never did.* He later also posted on social media comments about his participation in the January 6, 2021 events.

Even for people far more actively involved in the events of that day – and charged with felonies – the D.C. Circuit has made clear they remain entitled to the full panoply of their rights under the Bail Reform Act, including an *individualized* determination that evaluates community safety issues *prospectively*. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).[3] Here, of course, Mr. Hand and his wife are charged only with *non*-violent *misdemeanor* offenses. And looking prospectively at the present risks after the events of January 6, 2021 have subsided, one sees that, despite being fully aware of others' arrests in connection with these events, both were arrested without incident at their home over a year later, on March 11, 2022. Shortly thereafter, they were released on an unsecured bond with no firearms restrictions, which continued without any problems until U.S. Magistrate Judge Farruqui of this District granted the Government's new request that this condition be added, only because it is being sought in all of its January 6 cases.

---

[3] Undersigned counsel represented Mr. Munchel's mother, Lisa Eisenhart, in the consolidated *Munchel* appeal in which the District Court's earlier detention of both defendants was vacated by the D.C. Circuit.

## ARGUMENT AND CITATION OF AUTHORITIES

The Government properly references the four factors listed under 18 U.S.C. § 3142(g), but fails to properly apply those factors to the facts of this case.

**A.  "Nature and Circumstances of the Offense Charged"**

For example, the Government begins its discussion of the first factor by going far beyond the statute's actual parameters (Mr. Hand's "offense charged") by again seeking to impute to him offenses with which he has not been charged.  It points generically to activities of others it calls an "assault on the Capitol … and democracy," and references "significant injuries to law enforcement officers" that day.  But the "offense[s] charged" against Mr. Hand's allege neither.

Turning to the individualized evaluation *Munchel* demands, the Government then resorts to complaining about how Mr. Hand merely "chose to enter" the Capitol after he allegedly "witnessed" bad acts by others and then "walked through tear gas," thus "contribut[ing] to the crowd."  ECF #16, at 5.  But as the D.C. Circuit noted in *Munchel* itself, "those who cheered on the violence or entered the Capitol after others cleared the way" are wholly "in a different category of dangerousness" than "those who aided, conspired with, planned or coordinated such actions."  991 F.3d at 1284.  None of the instant allegations against Mr. Hand can fairly justify *wholly* depriving him, for an extended period, of a core right contained in the Bill of Rights itself: his individual Second Amendment right to keep and bear arms for self-protection.  *Heller v. District of Columbia*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010).

This is a misdemeanor case.  The "Offenses Charged" plainly weigh against this ban.[4]

---

[4] The Government cites to *United States v. Kastner*, Case No. 1:21-cr-725 (RDM) as a misdemeanor case in which a firearms restriction was affirmed by Judge Moss.  But there Kastner had admittedly "researched firearms in the time leading up to January 6, which Hand did not."  ECF #16, at 8.  Moreover, even despite this bad fact, Judge Moss still issued a carve-out from the firearms restriction, allowing Kastner to actually carry a firearm outside of his home to a church three times a week, where he continued serving on his church's (apparently armed) "security detail."  *Id.* at 7.

### B. "Weight of the Evidence"

On the second factor, the Government claims "the weight of the evidence is strong," ostensibly because much of the underlying evidence in this case was captured on video. But the Government misapprehends what this factor involves, by mistakenly assuming (without any citation to authority) that this factor is referencing the weight of the evidence on the underlying offense. It does not – but focuses instead on the weight of the evidence *of dangerousness. See, e.g., United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) ("This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt.").

That weight of the evidence (on dangerousness) is weak to non-existent here, and this factor also strongly weighs against a blanket ban on Mr. Hand's Second Amendment rights.

### C. "History and Characteristics of the Defendant"

The Government acknowledges that Mr. Hand stands before this Court as a man without any criminal record at all, other than a reckless driving conviction. It therefore tries to point to his wife's past criminal history. But the relevant statutory factor requires this Court to consider Mr. Hand as an individual – it does not call for any inquiry into the history and characteristics of one's "co-defendant," "spouse" or "partner." Nor would it be appropriate for Mr. Hand's own constitutional rights to be taken away merely because of a penalty placed on someone else.

The Government does not dispute Mr. Hand's recent snake incident at his home, but it argues "[s]uch a consideration is outside the Bail Reform Act framework," and suggests other snake safety alternatives. But the former is not correct,[5] and the latter seeks to improperly shift the burden onto this defendant: An accused defendant's Second Amendment rights are not deemed automatically voided and recoverable only when the defendant can establish that every other possible safety measure has been exhausted. Instead, a firearms restriction is a "special"

---

[5] The "characteristics of the defendant" quite naturally can be read to include his living arrangement and needs.

(not standard) condition properly imposed only when required, if the Government can in fact meet its burden of proving that it is the "least restrictive" condition necessary.

With his criminal record, this factor also strongly weighs against a blanket firearms ban.

### D.  "Nature and Seriousness of Danger to the Community"

The only prospective alleged danger to the community that the Government can identify, with respect to Mr. Hand possessing a firearm, is that his U.S. Pretrial Officer may be at risk if future home visits occur.  Yet the Pretrial Office in Columbus, Georgia that will be making those visits did not request this restriction when Mr. Hand made his initial appearance before the U.S. District Court for the Middle District of Georgia (which did not impose one).  Nor does it now seek to retain that provision after D.C.'s court added it:  that office advised undersigned counsel that they will leave that issue up to this Court's discretion.  The Government does not deny this.[6]

No generalized, prospective risk of danger to the community has been established, and the only specific risk of danger the Government has identified has not been validated by the Georgia office most affected by that risk.  They do not deem this restriction as necessary.  And neither, on that basis, should this Court.  This factor too weighs against a blanket firearms ban.

With all four relevant factors weighing against the Government, relief should be granted.

---

[6] This case is thus easily distinguishable from *United States v. Green*, 2019 U.S. Dist. LEXIS 208692, 2019 WL 6529446 (N.D. Tex. Dec. 4, 2019), cited by the Government, because the Pretrial Office there had recommended the firearms restriction.  Moreover, the Texas court there also found that the defendant in that case was such an anti-tax zealot that he had "likened the federal government to Nazi Germany," and even said he might do something so inflammatory that the Court literally redacted it from the opinion.  *See also* 2019 U.S. Dist. LEXIS 208692 at *7 (citing to Fifth Circuit case law involving "threats of violence against witnesses").

WHEREFORE, for the reasons stated, Defendant Charles Hand, III's Motion to Modify Conditions of Release should be granted to allow him to possess the two firearms identified, under such terms and conditions as this Court may deem appropriate.

Respectfully submitted,

  /s/ Gregory S. Smith
Gregory S. Smith
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C. 20003
(202) 460-3381
gregsmithlaw@verizon.net

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE is being served this day upon all counsel via the Court's ECF system.

This 11th day of May, 2022.

  /s/ Gregory S. Smith
Gregory S. Smith