UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL ACTION |
| ) | |
| CHARLES HAND, III ) | NO. 1:22-CR-00111-01 (JEB) |
| ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES Defendant CHARLES HAND, III, and files this Memorandum to assist this Court in deciding an appropriate sentence in this case. Consistent with the U.S. Probation Office's recommendation, defense sentence asks this Court to impose a sentence of no more than 36 months of probation, plus $500 in restitution and the required $10 special assessment.

## BACKGROUND

Mr. Hand entered a guilty plea in this case to one count of Parading, Demonstrating or Picketing in the Capitol Building, in violation of 40 U.S.C. § 5014(e)(2)(G). The statute, a Class B misdemeanor, allows for a maximum sentence of 6 months imprisonment.

## INTRODUCTION

The Government has filed a Sentencing Memorandum, seeking 30 days of incarceration, and a Supplement, admitting errors but still claiming Mr. Hand deserves to be imprisoned for 25 days, on this charge it admits is a mere petty offense. It listed six stated reasons, ECF 36, at 2, but the Government often overstates the relevant facts or ignores key mitigating factors:

   (1) It says Mr. Hand "continued into the Capitol after witnessing" certain activities, even though he did not cause any of those activities that it says he merely "witness[ed]";

   (2) It says he "broke off a piece of a metal fence while on restricted grounds … and place[d] it in his back pocket," even though that fence was already down at the time, and even though the Government admits it did not even stay in his pocket. *Id.* at 4.

1

(3) It claims while inside, Mr. Hand was just one of many who chanted, "Take it back."

(4) It claims Mr. Hand gave others "affirmation." It also says he "attempted to intervene in a fight between police and rioters" – but later admits he *did not* intervene. *Id.* at 7.

(5) It claims "after the riot, [Mr.] Hand demonstrated a lack of remorse," even though it admits he was "cooperative with law enforcement during his interview," *Id.* at 14, and even though he pleaded guilty and admitted *all essential elements* of this crime; and

(6) It wrongly asserted that Mr. Hand had texted his wife after January 6 to "don't turn yourself in," and "Deny, deny deny" – in what it ***now admits*** was a ***<u>false accusation</u>***.[1]

In other discovery revealed by the prosecutor, he also candidly disclosed, "consistent with my discovery obligations" that in one of his exchanges with his case agent, the FBI Case Agent said:

> **"They were the most cooperative and polite subjects/defendants I've dealt with in my 10 years in the FBI."**

*See* Exhibit A. While the events of January 6, 2021 were admittedly troubling, Mr. Hand is not criminally responsible for the separate activities of the hundreds or thousands of others that day, even if he "saw" or "heard" what they said or did. Our system of justice does not condone guilt or punishment "by association." As for his own activities surrounding this event, they were less aggravating than the Government suggests. And most importantly, the Government's hyper-focus on less than 24 hours, out of Mr. Hand's life comprising some 36 years, ignores Mr. Hand's commendable attributes and life experiences that strongly mitigate against imprisonment.

---

[1] The defense does not suggest this prosecutor knew this claim was false when he argued it. Once defense counsel requested the text and pointed out it did not appear to have been sent by Mr. Hand at all, the prosecutor investigated, then filed a retraction. ECF No. 40. Nevertheless, the reality remains that this was a false accusation – and a very serious one – essentially suggesting Mr. Hand had sought to obstruct justice. The Government also retracted another key accusation suggesting a lack of remorse by Mr. Hand – that he had supposedly bragged about how he was proud to be "a part of history!" *Id.* The picture of Mr. Hand now, after both retractions, is far different than what the Government had suggested when it demanded a 30-day prison sentence. How it can treat its withdrawal of perhaps its two most significant aggravators, as only worth a 5-day reduction in its revised recommendation, is a mystery.

2

**FACTUAL BACKGROUND**

**A. Mr. Hand's Activities on January 6, 2021 Were Not as Aggravating as Suggested**

The Government admits the Hands spent only 20 minutes inside the Capitol Building. Despite all the foment going on around them, including violence and property destruction, Mr. Hand never engaged in violence or property destruction.[2] In fact, as the Government concedes, Mr. Hand cautioned *against* such activity. *Id.* at 11 (telling others we are "not there for that").

After 20 minutes, the Hands exited voluntarily, and without anyone demanding that they leave. But the Government still criticizes them for circling to the Memorial Doors on the East side of the Capitol, *id.* at 9, with the Government claiming it proves they were "not done." *Id.* But what more did they do? As the Government admits, Mr. Hand explained they sought out this other area instead because it felt "safer and closer to what they thought a protest would be," consistent with "his purpose of being there" which was not to riot, but "to protest." *Id.* at 11.

That purpose, and the background of their participation here, is worth noting. The Hands are not alleged to be part of any organized group that was among the planners of January 6. They in fact had no plans at all to come to Washington, D.C. until the weekend before, when Mr. Hand got a call from an ex-employer. That ex-employer – with whom Mr. Hand no longer works, said he had heard the Hands followed politics, and then offered to pay his (and his wife's) way if they wanted to attend the January 6 "Stop the Steal" rally. This was the first time they considered coming to this rally in Washington, D.C., which they had never previously visited.

As the Government's brief notes, they attended the former President's rally, and then advanced with that crowd to the Capitol (as the former President urged them to do). There was no advance planning, no tactical wear, etc. All of their actions appear to be entirely *impromptu*,

---

[2] The Government claims Mr. Hand at one point "attempted to move toward one of the altercations," but was "stopped by Robinson-Hand." *Id.* at 7. This idea that she could have "stopped" her far larger husband from joining a fight he truly wanted to join is unlikely. In any event, on reflection he clearly paused and chose not to intervene.

3

following a crowd much like fans sometimes follow others onto a football field improperly after a game.  Obviously, this was more than that, and these Defendants admittedly were more than simply tourists.  They have faced criminal charges as a result and now have formal convictions, and now face the weight of potential federal criminal penalties.  But in the larger scheme of the events surrounding January 6, they appear among the least culpable of those inside the Capitol.

The Government compares this case to two other January 6 cases involving this same charge, where Defendants were sentenced to prison: Jordan Revlett (14 days v. Government's recommended 30 days, in Case No. 1:21-cr-281-JEB) and Rafael Valdez (30 days, in Case No. 1:21-cr-695-JEB).  But those cases had significant aggravating factors *clearly not present here*:

> Revlett had brought a bullhorn into the Capitol to rile the crowd up.  More importantly, she admittedly *lied to the agents* when interviewed, ECF No. 36, at 20 – the polar opposite of Mr. Hand's interaction with his case agent who praised his cooperation here.
>
> Valdez was part of a mob that "pushed past officers" in the Crypt, and he also did not express any remorse for his actions.  *Id.* at 21.  Neither is true of Mr. Hand here, who did not physically interact with any officers, and who does express remorse, as noted below.

### B.  Mr. Hand's 36 Years Reveal an Honorable Man Deserving of Probation

Mr. Hand's overall life is summarized in considerable detail in his Presentence Report.  While it does not show a perfect life, it does reveal a man who has genuinely tried his best and has worked hard during his lifetime to overcome many significant challenges and adversities.

Mr. Hand has lived his entire life in rural Georgia.  His parents divorced when he was 6 years old.  Mr. Hand described how he grew up in a "broken home due to his parents' divorce," and he vaguely recalled some shouting and screaming before they split, but also said "his parents always provided the essentials and he and his sister never went without."  His mother, however,

described how "the defendant had a disciplined childhood," and said he may also "have witnessed some domestic violence when he was approximately six years old." PSR ¶ 35.

Mr. Hand's father was a Master Mechanic. Mr. Hand's mother said Mr. Hand's relationship with his father was "sporadic after the divorce; however, they became good friends as the defendant became older." Unfortunately, his father passed away unexpectedly, at age 50, in 2017. PSR ¶ 33. Mr. Hand described his father "as his best friend." *Id.* He remains in contact with his mother, and his sister, who he "has always been protective of." PSR ¶ 36.

Mr. Hand has been together with the co-defendant, Mandy Robinson-Hand, since 2010, and they married in 2020. Ms. Robinson-Hand is disabled and receives a SSI monthly benefit. Beyond that stipend, it is Mr. Hand's responsibility to earn the family's income. Via on-the-job training, Mr. Hand became a construction manager, and has he had steady income working full-time for the same employer for over a decade. PSR ¶ xx.[3]

Despite those significant financial pressures placed on him, Mr. Hand describes his relationship with his wife as "great." He says the two of them were "made for one another" and she "helps bring out the best [in] him." PSR ¶ 38. Mr. Hand's mother confirmed their marriage is "great," and said Mr. Hand, in his appreciation, continues to put his wife "on a pedestal." *Id.*

Although they have no children together, Mr. Hand has treated (and describes) his three grown stepchildren (via Ms. Robinson-Hand) as his own children; their relationship is good, with regular communications. PSR ¶ 38. In 2020, Mr. Hand also learned for the first time that he had a natural child who had been born in 2008 from another relationship. Mr. Hand then endeavored to take affirmative steps to form a relationship with this 13-year old daughter. *See* PSR ¶ 37.

---

[3] This Court should not misconstrue the absence of character letter filings as absence of support. As requested by counsel, Mr. Hand did request letters of support from his employer and certain friends, but he ultimately did not feel comfortable drafting up letters for their signature, as many asked him to do. He also felt this situation was more his problem than theirs, so he chose not to press his requests for character letters further. Mr. Hand is a humble man, and the absence of such letters here is frankly more of a verification of his character than a lack of such.

5

Mr. Hand and his wife regularly attend church and are faith-based people. As the PSR's summary of their financial condition reveals, for example, they have regularly tithed about $400/month despite the significant ongoing financial hardships they face themselves. PSR ¶ 54.

Shortly after Mr. Hand's arrest in the instant case, outside supporters of the January 6 protests did make online contributions to many persons facing such charges, including these Defendants. Mr. Hand duly reported this asset to the U.S. Probation Officer in this case, and the $1300 raised is cited in PSR ¶ 51. As a part of his demonstration of remorse, Mr. Hand stopped long ago any solicitation of such funds, and he does not intend to solicit any more. *Id.* He also declined to let undersigned counsel seek CJA travel funds for his upcoming sentencing hearing.

Mr. Hand is doing his best to get by. Any positive view of the events of January 6, 2021 has long since faded, with the bloom now long off the rose. After being named in this case, these Defendants have faced ostracism and even vitriol on some social media platforms,[4] placing a strain on their family such that their lives have not been the same.

Mr. Hand submits herewith a written statement, explaining what he has learned and expressing remorse for his participation in this offense. It states, in pertinent part, as follows:

> The government states that I am not a remorseful man … this couldn't be further from he truth. I do know now that I should have never entered into the Capitol and I fully understand the impact of my actions. I also understand that I have to be held accountable for my actions. Although [I] myself did no harm or damage, the fact I was there in itself was encouraging and endorsing for others around me to cause strife and inflict damage. I am very remorseful, this experience has impacted my life beyond anything I could ever imagine. The long term effects outside of the courts and the stigma associated with this case will far outlast any sentence imposed on me. I sincerely apologize for my actions, what transpired was never my intent. Needless to say, I have no urge to return to Washington D.C.….

---

[4] One particularly nasty post, which the defense can share with the Court at sentencing, bizarrely (and falsely) claimed Mr. Hand was being investigated on other extremely serious criminal charges. The new false accusations in the Government's original Sentencing Memorandum, although retracted, thus take on added potential gravity here.

*See* Exhibit B (full excerpt of Mr. Hand's statement, further speaking on behalf of his wife).

These Defendants have recently been forced to declare personal bankruptcy, and are only now getting back on their feet, hoping to get this matter finally behind them. In the meantime, all the while Mr. Hand has continued to work hard and regularly, to try to be a good family man, and to endeavor to be a good Christian.

The Government stresses that Mr. Hand has two prior criminal matters, each of which resulted in a fine.[5] But both cases are over 12 years old. PSR ¶ 25-26. Since then, Mr. Hand has fully stopped drinking alcohol, and has currently been sober for more than 5 years. PSR ¶ 44.[6]

## ARGUMENT AND CITATION OF AUTHORITIES

When federal courts are tasked with imposing a criminal sentence, Congress has provided a list of statutory factors they should consider. Those statutory factors include:

(a) the nature and circumstances of the offense and the history and characteristics of the defendant;

(b) the kinds of sentences available;

(c) the Sentencing Guideline range;

(d) the need to avoid unwarranted sentencing disparities;

(e) the need for restitution; and

(f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from future crimes, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

---

[5] The Government's summary at this point contains a mistake. It claims Mr. Hand had a misdemeanor arrest for criminal trespass *and* DUI in 2005 and then "a 2010 arrest for the same offenses." *See* ECF No. 36 at 14. But as PSR ¶¶ 25-26 clarifies, Mr. Hand's 2005 arrest was for criminal trespass only, and his 2010 arrest was for DUI only.

[6] Mr. Hand did admit to using marijuana, but only to use it alongside his wife, who had started to smoke marijuana in an effort to wean herself off of prescription pain medications, following the accident that caused her disability.

18 U.S.C. § 3553(a).  In evaluating these various statutory factors and exercising its discretion, this Court must also recognize the overarching rationale of § 3553(a), for its ultimate directive is that federal courts must "impose a sentence *sufficient, but not greater than necessary* to comply with the purposes" of federal sentencing.  18 U.S.C. § 3553(a) (emphasis added).

### A. Nature and Circumstances of the Offense and Characteristics of the Defendant

As noted above, the nature and circumstances of Mr. Hand's offense (Parading inside the Capitol) are on the less serious side.  His "offense" – which is what this Court is *supposed* to examine under this factor when evaluating its seriousness – was a violation of 40 U.S.C. § 5104(a)(2)(G), a 6-month misdemeanor, classified as a "petty offense."  The Government attempts to lump him in with some of the worst of the many others present that day, by association, but *their offenses are not his offenses.*  And his personal characteristics, as noted in detail above, are worthy of careful consideration by this Court, and justify a probated sentence.

Each of us is more than the worst thing we have ever done.  While Mr. Hand's parading inside the U.S. Capitol on January 6, 2021 was admittedly wrong, a probated sentence would still be a significant sanction, and more than he has ever faced before.  This would be the first time in his life that Mr. Hand would be supervised on probation; it would also represent an incrementally more severe sentence beyond the fines he received in his earlier cases over a decade ago.  There also is no reason to believe he would not fully comply with any new conditions of supervision imposed.[7]  Considering the circumstances of this offense and his personal characteristics, the Government has failed to meet its burden of proving imprisoning Mr. Hand is "necessary" here.

### B. The Kinds of Sentences Available

Mr. Hand's offense of conviction has no minimum sentence required, and a maximum sentence of just 6 months of incarceration.  Probation is undeniably available in this case.

---

[7] In this case, Mr. has already been under pretrial supervision, and has complied without incident, since March 2022.

### C. The Sentencing Guidelines Range

Because this is a petty offense, the Sentencing Guidelines do not even apply in this case.

### D. The Need to Avoid Unwarranted Sentencing Disparities

Under this factor, this Court must evaluate if the sentence imposed on Mr. Hand would unduly diverge from sentences given to others similarly situated. To assist, the Government's Sentencing Memorandum attaches a chart of all the other January 6 cases it claims have been sentenced so far. But contrary to the Government's analysis, those other cited cases actually reveal that incarceration of Mr. Hand is what would create an unwarranted sentencing disparity.

As noted, the Government has specifically contrasted two other January 6 cases handled by this Court, claiming that their facts are the most similar. Neither is similar at all, since both involve significant aggravating factors not present here, as noted above.

A more fulsome analysis of the Government's chart reveals that this Court has actually sentenced 16 such defendants thus far. Of those 16 January 6 cases, half (8) involved the same charge involved in the instant case: 40 U.S.C. § 5014(a)(2)(G). Those cases are as follows:

> *US v. Andrew Bennett*, 1:21-cr-227-JEB (3 months' home confinement)
>
> *US v. Caleb Jones*, 1:21-cr-321-JEB (2 months' home confinement)
>
> *US v. Douglas Fahrquar Macrae*, 1:22-cr-181-JEB (12 months' probation)
>
> *US v. Gary Edwards*, 1:21-cr-366-JEB (12 months' probation)
>
> *US v. Leonard Ridge, IV,* 1:21-cr-366-JEB (14 days' incarceration)
>
> *US v. Paul Westover*, 1:21-cr-697-JEB (45 days' incarceration)
>
> *US v. Jordan Revlett*, 1:21-cr-281-JEB (14 days' incarceration)
>
> *US v. Rafael Valadez*, 1:21-cr-695-JEB (30 days' incarceration)

9

As noted above, looking at this full list of eight comparable cases this Court has handled, one sees that no sentence of incarceration at all was imposed in half (4) of them – with two involving straight probation of just one year (without any home confinement). In two other cases, just 14 days of incarceration was imposed (far less than what the Government demands here). In only two of these eight cases was a sentence of 30 days or more imposed, and those two cases plainly involved aggravating factors not present here. In short, it is the Government's suggested sentence – not this Defendant's – which would create an unwarranted disparity here.

### E. The Need for Restitution

There is restitution owing in this case, but Mr. Hand and his wife both entered into a plea agreement in which they have agreed to pay the full amount of restitution suggested by the Government, $500 each. It is expected that this factor will be satisfied by the Court's sentence.

### F. Other Factors Listed

Finally, under 18 U.S.C. § 3553(a)(2), this Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from future crimes; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

On this factor, the Government's Sentencing Memorandum focuses almost exclusively on the need for deterrence, ignoring the fact that, as noted in § 3553(a)(2) itself, those goals and the others listed under this factor must also be balanced with considerations of "just punishment."[8] It also appears to now be the Government's view, based on its chart, that no

---

[8] The Government's filing spends pages discussing "General Deterrence" and "Specific Deterrence," while its review of the "History and Characteristics of C. Hand" covers just 4 lines, focusing exclusively on his prior record.

January 6 defendant *ever* deserves a sentence of probation without some confinement.[9]  As noted above, that view is not consistent with his Court's own previous rulings, as noted above.  Nor is it consistent, frankly, with the views of other judges in this District.

The *Washington Post* just recently published an article on the two-year anniversary of January 6, 2021, summarizing the 357 sentences imposed in related criminal cases thus far.  *See* Washington Post, January 6, 2023, https://www.washingtonpost.com/dc-md-va/2023/01/06/jan6-capitol-riot-sentencings/, attached as Exhibit C.  The article reveals that this Court's own sentences appear to be squarely within the mainstream – and that the Government's own reflexive recommendations of confinement are not.  As the article notes, the various judges of this District "have gone below federal prosecutors' sentencing recommendations in more than three-quarters of the cases so far."  *Id.* p.2  "[M]ost of the misdemeanants have not received any jail time:  most have received probation, home detention or halfway house time, or a fine."  *Id.*

One might therefore debate whether the Government's Sentencing Memorandum is actually correct in claiming no "presumption" of probation exists in January 6 misdemeanor cases, although that issue need not be resolved.  But what should not be debatable is this:  the opposite is clearly true.  There is not any presumption of incarceration here, and indeed there *cannot* be, consistent with § 3553(a)'s statutory mandate for courts to only impose a sentence "sufficient but not greater than necessary" to accomplish the purposes of sentencing.

Mr. Hand does not *need* to go to prison here.  His own actions on January 6, 2021 do not require it, and neither does his personal background.  His financial situation is quite precarious, and he should be allowed to continue his efforts to work to provide for his family.  There seems little doubt that Mr. Hand will comply with all conditions of probation, just as he has complied

---

[9] The Government's chart shows it has not recommended only probation since its very early cases in which it had agreed to make that recommendation in plea agreements that it could not breach.  Since then, the Government's policy has apparently hardened; it now suggests no one charged in a January 6 case ever deserves such probation.

with the requirements of U.S. Pretrial Services over the past 9 months or so. The U.S. Probation Office, just like the U.S. Attorney's Office, has also reviewed and evaluated hundreds of these January 6 cases; following a thorough investigation of all the facts here, including a fulsome review of Mr. Hand's personal background, the U.S. Probation Office has concluded that probation is warranted. That recommendation (and not the reflexive opposition to probation in all January 6 cases apparently adopted as policy by this U.S. Attorney's Office) should be followed by this Court, and it should impose a sentence of no more than 3 years of probation on Mr. Hand in this case, along with the $500 in restitution and $10 special assessment required.[10]

## CONCLUSION

For the foregoing reasons, the defense requests that this Court sentence Defendant Charles Hand, III to a term of probation, $500 in restitution, and a $10 special assessment.

This 9th day of January, 2023.　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　 /s/ Gregory S. Smith
　　　　　　　　　　　　　　　　　　Gregory S. Smith
　　　　　　　　　　　　　　　　　　D.C. Bar No. 472802
　　　　　　　　　　　　　　　　　　913 East Capitol Street, S.E.
　　　　　　　　　　　　　　　　　　Washington, D.C. 20003
　　　　　　　　　　　　　　　　　　(202) 460-3381
　　　　　　　　　　　　　　　　　　*Counsel for Defendant Charles Hand, III*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2023, a true and correct copy of the above and foregoing is being forwarded to all counsel of record in this case automatically via PACER, which is this Court's Electronic Case Filing (ECF) system.

　　　　　　　　　　　　　　　　　　 /s/ Gregory S. Smith
　　　　　　　　　　　　　　　　　　Gregory S. Smith

---

[10] Although hopefully unnecessary, defense counsel does reserve the right to argue at sentencing against the Government's highly unconventional request for imprisonment to be imposed as a "condition" of probation, which the defense submits would constitute an illegal sentence.